UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Betty J. Bishop<br><br>               Debtor | Chapter 7<br>Case No. 15-10554 |
| Nathaniel Hull,<br><br>               Plaintiff<br>v.<br><br>Betty J. Bishop, Peter Bishop, and<br>TD Bank, N.A.<br><br>               Defendants | Adv. Proc. No. 15-1031 |

## MEMORANDUM OF DECISION

In this adversary proceeding, the chapter 7 trustee seeks to avoid a mortgage on real estate owned by the Debtor and her husband, as joint tenants, and then to sell their interests in the real estate. The Debtor and her husband object. The mortgagee, TD Bank, N.A., also objects.

The trustee has moved for summary judgment on all counts of his complaint. TD Bank has also moved for summary judgment. The competing motions present two questions: first, whether the trustee is entitled to avoid the mortgage because of an incomplete certificate of acknowledgment and second, whether the trustee may sell the Debtor's interest in the property and the interest of the co-owner, with both interests being sold free and clear of TD Bank's mortgage. The trustee and TD Bank agree that there is no genuine issue of material fact necessitating a trial; each contends that it is entitled to judgment as a matter of law based on the undisputed facts.

This is a difficult case. The Court is required to predict the answer to a complex question under Maine real estate law. There are statutes and cases bearing on the question, but none of them provide a clear answer, and the parties have raised plausible arguments in support of their respective positions. Ultimately, for the reasons set forth below, the Court agrees that the Trustee is entitled to the relief he seeks.[1]

## I.     Undisputed Material Facts

The following facts are taken from the parties' statements of undisputed material fact. For purposes of the competing motions, the Court accepts them as true.

On August 5, 2015 (the "Petition Date"), Betty Bishop (the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code. On the Petition Date, Nathaniel Hull (the "Trustee") was duly appointed as the chapter 7 trustee. The Debtor owns a one-half interest in property located at 1 Ridgeway Court, Houlton, Maine (the "Property"). As of the Petition Date, the Debtor's husband, Peter Bishop, owned the other one-half interest in the Property as a joint tenant with Debtor. Neither the Debtor nor Mr. Bishop is residing in the Property, and the Debtor is not claiming any exemption in the Property.

The Property was conveyed to the Debtor and Mr. Bishop by deed dated November 13, 2012. Two days later, Mr. Bishop executed a promissory note in the original principal amount of $123,400 (the "Note"). TD Bank is the holder of the Note. On the same day, the Debtor and Mr. Bishop granted a mortgage to TD Bank to secure the repayment of the Note (the "Mortgage"). The Mortgage identifies the Debtor and Mr.

---

[1] The trustee filed a three-count complaint against the Debtor, her husband, and TD Bank, and the Bishops asserted cross-claims against TD Bank. The trustee's claims and the Bishops' cross-claims have been bifurcated. As a result of that bifurcation, the summary judgment in favor of the trustee is not a final judgment, and remains subject to revision. *See* Fed. R. Civ. P. 54(b); *see also* Fed. R Bank. P. 7054.

2

Bishop as the borrowers, but does not identify them as citizens of Maine, nor does it reveal their address.  The Mortgage was recorded in the Southern Aroostook County Registry of Deeds.  The Bishops acknowledged the Mortgage in front of Philip Jordan in Houlton, Maine.  The certificate of acknowledgement reads as follows:

> Acknowledgment
> State of
> County of
>
> This instrument was acknowledged before me on November 15, 2012 by Peter M. Bishop and Betty J. Bishop
>
>
> */s/ Philip K Jordan*
> Notary Public
>
> My commission expires:
>
> Philip K. Jordan
> Notary Public, Maine
> My Commission Expires September 5, 2014

The Property is a single-family home on approximately 0.34 acres, and physical partition of the Property is impracticable.  The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.  As of the Petition Date, there were no encumbrances of record on the Property other than the Mortgage.  A sale of the Debtor's interest in the Property as a tenant in common to a stranger would result in less money for the bankruptcy estate than selling the entire Property free and clear of all encumbrances and keeping half of the net proceeds.

II.     Analysis

    A.      Is the Trustee Entitled to Avoid the Mortgage?

As of the Petition Date, the Trustee acquired rights and powers of "a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3). Similarly, the Trustee may avoid transfer of property of the debtor that is voidable by the type of bona fide purchaser described in section 544(a)(3). *See* 11 U.S.C. § 544(a). The Trustee's rights under section 544 are "without regard to any knowledge of the trustee or any creditor[.] 11 U.S.C. § 544(a). Using section 544 and invoking Maine real estate law, the Trustee seeks to avoid the Mortgage based on the incomplete acknowledgement.

On the surface, the first question is one of federal bankruptcy law. However, the question cannot be answered without looking to applicable nonbankruptcy law. Here, the parties agree that Maine real estate law is the right place to look. As a result, the Court is required to predict how the Maine Supreme Judicial Court would answer this question: would a bona fide purchaser of the Property from the Debtor on the Petition Date have acquired an interest in the Property senior to the Mortgage? This brings into focus the problem with the certificate of acknowledgment, which does not state where Mr. Jordan was located when the Bishops acknowledged the deed.

    Maine's recording statute provides, in pertinent part:

> No conveyance of an estate in fee simple, fee tail or for life, or lease for more than 2 years or for an indefinite term is effectual against any person except the grantor, his heirs and devisees, and persons having actual notice

4

>   thereof unless the deed or lease is acknowledged and recorded in the
>   registry of deeds within the county where the land lies[.]

33 M.R.S.A. § 201. As to the grantor, the grantor's heirs and devisees, and persons having "actual notice" of the conveyance, acknowledgment and recordation are not required; as to all others, the deed must be acknowledged and recorded.

Obviously, the Trustee is neither the grantor nor one of her heirs and devisees. The parties do not squabble over whether the Trustee is a person having "actual notice" as that term is used in section 201.[2] Instead, they focus their arguments on whether the certificate of acknowledgement is "defective."

The requirement of an acknowledgement of a deed has existed in Maine for nearly two hundred years. *See* Pub. Laws 1821, p. 130, c. 36. The current statute, entitled "Need for Acknowledgment," provides:

>   Deeds and all other written instruments before recording in the registries
>   of deeds. . . must be acknowledged by the grantors, or by the persons
>   executing any such written instruments, or by one of them, or by their
>   attorney executing the same . . . before a notary public in the State, or
>   before an attorney-at-law duly admitted and eligible to practice in the
>   courts of the State, if within the State; or before any clerk of a court of
>   record having a seal, notary public or commissioner appointed by the

---

[2] TD Bank does not explicitly argue that a hypothetical bona fide purchaser under Maine law (and, by extension under section 544, the Trustee) would be a person having actual notice of the Mortgage. It does assert, in passing, that the Trustee "did not attain [bona fide purchaser] status and may not avoid the mortgage." *See* TD Bank's Motion for Summary Judgment and Incorporated Memorandum of Law, at 3. But the bank does not cite section 201, or any authority dealing with this specific issue. *See, e.g.*, 33 M.R.S.A. § 201-A (entitled "Conditions of actual notice"); Spickler v. Ginn, 2012 ME 46, 40 A.3d 999 (2012)(interpreting 33 M.R.S.A. § 201 as a type of "race notice" recording statute, but declining to determine what circumstances would result in a subsequent grantee having actual notice of a prior, unrecorded deed); Hopkins v. McCarthy, 115 A. 513, 121 Me. 27 (1921)(holding that a purchaser of real property had actual notice of an unrecorded lease when the purchaser knew that the tenant was in possession of the leased premises under a written lease agreement); Knapp v. Bailey, 9 A. 122, 79 Me. 195 (1887)(discussing the concept of actual notice); Porter v. Sevey, 43 Me. 519 (1857)(discussing the origins of actual notice under Maine's recording statute); *see also* Sprague v. Kelly (In re Kelly), 29 B.R. 708, 710 (Bankr. D. Me. 1983)(holding that a chapter 7 "is to be treated as being without actual notice of an unrecorded deed"); Maine National Bank v. Morse (In re Morse), 30 B.R. 52 (1st Cir. B.A.P. 1983)(holding that a bankruptcy trustee was a person with actual notice of a bank's mortgage on property despite the recordation of a discharge of that mortgage, where a certificate of foreclosure had been recorded after the discharge). As a result, this particular question is not properly before the Court, and the Court does not predict how the Maine Supreme Judicial Court would answer it.

5

> Governor of this State for the purpose, or a commissioner authorized in the State where the acknowledgment is taken, within the United States; or before a minister, vice-consul or consul of the United States or notary public in any foreign country.

33 M.R.S.A. § 203. Section 203 requires the acknowledgment to be made before a particular official based on where the acknowledgment is taken: (i) within the State of Maine; (ii) within the United States (but presumably outside the State of Maine); or (iii) in any foreign country.[3] The Trustee argues that, because the certificate of acknowledgment does not indicate where it was taken, the acknowledgment is defective. From there, the Trustee reasons that a defective acknowledgment is the equivalent of no acknowledgment and that a deed without an acknowledgment does not provide constructive notice to a bona fide purchaser. Thus, says the Trustee, he can avoid the Debtor's grant of the Mortgage. The Trustee concedes that his argument is a technical one.

The Court agrees with the Trustee. In many areas of the law, technical distinctions are important, and the parties' rights can frequently turn on those distinctions. This is particularly true in the area of real estate law. *See, e.g.,* Stern v. Continental Assurance Co. (In re Stern), 851 F.2d 502, 509 (1st Cir. 1988)("Land recording laws must, by their very nature, employ technical rules because the 'substance'—presumably the fairness of giving one bona fide purchaser priority over another—yields no simple answers."). The Trustee relies on a number of cases, none of which squarely answer the

---

[3] Section 203 also dictates that an instrument with an acknowledgement that conforms to the requirements of the Uniform Recognition of Acknowledgments Act, 4 M.R.S.A. §§ 1101-1019, must be accepted for recording. But the forms of acknowledgment validated by the Uniform Recognition of Acknowledgments Act all require an indication of the place where the acknowledgment is taken. *See* 4 M.R.S.A. § 1016. That information is lacking in the Mortgage.

6

question. *See, e.g.*, Hudson v. Webber, 72 A. 184, 104 Me. 429 (1908); DeWitt v. Moulton, 17 Me. 418 (1804). Some of those cases, however, provide useful guidance.

Hudson involved a disputed claim to ownership of real estate in Piscataquis County, Maine. Two of the deeds in the plaintiff's chain of title were challenged by the defendant on the grounds that they lacked proper acknowledgements. One acknowledgment recited that the deed had been executed in "Suffolk, ss. Feb. 19, 1835" and the other recited that it had been executed in "Suffolk ss. Boston, Oct. 12, 1835." The Law Court began its analysis by noting that:

> [a]n original unacknowledged deed, or deed with defective certificate of acknowledgment, is valid and admissible in evidence as against the grantor and his heirs; but, if not properly acknowledged and recorded, it is not valid or admissible, except as against the grantor and his heirs. Such was the law when these deeds were executed.

72 A. at 185. The Law Court also expressed its belief that:

> <u>a certificate of acknowledgment is insufficient when it does not disclose the place or venue where it was taken</u>, for a magistrate has no authority to take acknowledgments outside the state, within and for which he is appointed. It must appear that he acted within the territorial limits of his jurisdiction.

Id. (emphasis added). The question was whether, by examining the entire instrument, the place where the acknowledgment was taken could be discovered with reasonable certainty. *See* id. at 186. After examining both acknowledgements, the Law Court ruled in favor of the plaintiff. The acknowledgement that identified "Suffolk ss. Boston" presented little difficulty. But the second acknowledgment presented a closer call:

> The difficulty here is, not in knowing judicially that there is a Suffolk county in Massachusetts, but in ascertaining whether that Suffolk county is the one where this deed was acknowledged. There are, or may be, other Suffolk counties. It appears that one of the parties, the grantee, lived in Waltham, Mass., within the territory of which Boston in Suffolk county was then, as now, the business and commercial center. This fact has slight

7

> probative force, but it has some. Prima facie, it leads us to think that the deed was acknowledged in that Suffolk county which is in Massachusetts rather than in any other one.

Hudson v. Webber, 72 A. at 186.  The Law Court did not, however, rule that the second acknowledgment was sufficient.  Instead, it sustained the validity of the second deed on different grounds, that is, that the deed had gone unchallenged for more than seventy years.  *See* id.

The acknowledgment in this case does not identify the municipality, the county, or the state where it was taken.  And the mortgage deed has not gone unchallenged for anywhere near seventy years.  These two facts make the acknowledgment in question in this case materially different from those upheld in Hudson.  There is no indication—in the certificate of acknowledgment or in the Mortgage itself—of where Mr. Jordan was physically located when he took the Bishops' acknowledgment that the deed was their free and act deed.  True, the Property is located in Maine and Mr. Jordan is a notary public commissioned in Maine.  But those facts tell us nothing about where Mr. Jordan was located when he acknowledged the Mortgage, and his location is critical to the question of whether he had the authority required by statute to acknowledge the instrument.

The Trustee also cites DeWitt v. Moulton, 17 Me. 418 (1804), a case involving a mortgage with no acknowledgment whatsoever.  Although DeWitt is not a "defective acknowledgment" case, it does lend support to the Trustee's position here:  if a mortgage with no acknowledgment does not provide constructive notice (as the Law Court concluded in DeWitt), then it seems reasonable to conclude that a mortgage with an incomplete acknowledgment would suffer the same fate.  That is particularly true where

8

the missing information is material to understanding whether the officer taking the acknowledgment had authority to do so.

The Trustee also relies on a recently-enacted Maine statute, 33 M.R.S.A. § 352. Section 352, titled "Defective Acknowledgments," provides as follows:

> A record of a deed or other instrument, including a power of attorney, made prior to January 1, 2013 for the conveyance of real property, or of any interest in the property, and recorded in the registry of deeds of the county in which the real property is located is valid and enforceable even if:
>
> **1**. **Acknowledgment.**  The acknowledgment:
>
>     A. Was not completed;
>
>     B. Was erroneously taken;
>
>     C. Was taken by a person not having authority to take the acknowledgment or the authority of the person taking the acknowledgment was not completely stated or was erroneously stated;
>
>     D. Does not reveal whether the authority taking the acknowledgment acted as a notary public, a justice of the peace or other duly authorized authority for the taking of the acknowledgment;
>
>     E. Was not taken;
>
>     F. Had not been signed by the authority taking the acknowledgment but the authority had attached, affixed or stamped the deed or instrument with a seal of authority;
>
>     G. Was taken by the grantor or grantee or by the husband or wife of the grantor or grantee;
>
>     H. Was taken by a magistrate who was a minor or an interested party or whose term of office had expired at the time of the acknowledgment;
>
>     I. Was taken by an officer authorized to take an acknowledgment but outside the territory in which the officer was authorized to act;
>
>     J. Was taken by a person who, at the time of the acknowledgment, had received an appointment, election or permission authorizing that person to take the acknowledgment, but had not qualified and who has since qualified to take an acknowledgment;

9

> K. Was authorized by the grantor who was acting as a duly authorized agent or officer of a corporation or in a fiduciary or representative capacity for a corporation;
>
> L. Was taken in another state or country before a person authorized to take acknowledgments and was made on the form of acknowledgment prescribed by the laws of the state or country in which the deed or instrument was executed or the person taking the acknowledgment failed to affix a proper certificate to the deed or instrument, showing that person's authority to act as a magistrate;
>
> M. Was not signed by a magistrate of this State or any other state or territory of the United States, or any foreign country, authorized to take an acknowledgment but was complete in every other respect and was signed by an ambassador, minister, charge d'affaires, consul, vice-consul, deputy consul, consul general, vice-consul general, consular agent, vice-consular agent, commercial agent or vice-commercial agent of the United States who was not qualified to take an acknowledgment, but has since become qualified by law to do so;
>
> N. Was signed by a magistrate authorized to take an acknowledgment but the magistrate's official seal, the names of the grantors, the date and place of acknowledgment, the words "personally appeared before me" or a statement that it was acknowledged as the grantor's "free act and deed" had been omitted; or
>
> O. Is in the form of an oath or states merely that the deed or instrument was subscribed in the magistrate's presence, or is otherwise informal or incomplete, but was signed by a magistrate authorized to take an acknowledgment[.]

33 M.R.S.A. § 352 (2015). Here, the Mortgage was made prior to January 1, 2013, specifically, in November 2012. At first blush, section 352 would seem to insulate the Mortgage from challenge based on the incomplete acknowledgment. But, not so fast, says the Trustee. This version of section 352 was enacted in 2015 and became effective on October 15, 2015—which is almost three months <u>after the Petition Date</u>. The Trustee acquired the rights and powers of a bona fide purchaser <u>on the Petition Date</u> and, on that date, the curative statute in effect applied only to deeds made prior to January 1, 2000. *See* 33 M.R.S.A. § 352 (2014).

10

Instead of relying directly on section 352, the Trustee makes a more nuanced argument. He contends that the existence of the curative statute shows the Maine Legislature's recognition that incomplete acknowledgments are problematic. Without the protection of section 352, the argument goes, the incomplete acknowledgement dooms the Mortgage to a challenge by a bona fide purchaser.

Section 352 does not answer the question before the Court. It does, however, provide a hint about the correct answer. Here, the acknowledgment in the Mortgage was not completed. That is one type of acknowledgement that the Legislature appears to have been contemplating when it enacted section 352. *See* 33 M.R.S.A. § 352(1)(A). There is no way to determine, from the face of the instrument, whether the grantors were physically present in Maine when their execution of the Mortgage was acknowledged. And we know that the physical location of the person executing a mortgage is important: the qualifications of the person taking the acknowledgment vary depending on where the acknowledgment is taken. *See* 33 M.R.S.A. § 203; *cf.* 33 M.R.S.A. §§ 352(1)(C) and (L).

TD argues that the only reasonable inference is that the acknowledgment was taken in Maine. The Debtor and her husband live in Maine, the Property is located in Maine, and Mr. Jordan is commissioned as a notary public in Maine. TD is probably right, but that matters not in this context. Given the technical requirements for transfers of real estate, the dicta in Hudson, and the hint provided by section 352, the Court believes that, under Maine law, the Mortgage would not provide constructive notice of the bank's lien and, as a result, a bona fide purchaser would have acquired an interest in the Property senior to the Mortgage. Thus, the Trustee is entitled to avoid the Debtor's grant of the mortgage under section 544(a)(3). This result, while perhaps harsh, is consistent with the

11

results obtained in other similar cases. *See, e.g.,* Gregory v. Ocwen Federal Bank (In re Biggs), 377 F.3d 515 (6th Cir. 2004)(affirming order avoiding, under section 544, a mortgage containing a partially-completed acknowledgment); Cornell v. Bank of America, N.A. (In re Pellerin), 529 B.R. 801 (Bankr. D.N.H. 2015)(granting trustee's request to avoid mortgage containing an acknowledgment that suffered from multiple defects, including failure to note where the acknowledgment was taken); Agin v. Mortgage Electronic Registration Systems, Inc. (In re Giroux), 2009 WL 1458173 (Bankr. D. Mass. 2009)(holding that a chapter 7 trustee could avoid a mortgage on real estate in Massachusetts where the acknowledgment did not specifically identify the debtor as the person who appeared before the notary); *cf.* Bank of America v. Casey (In re Pereira), 791 F.3d 180 (1st Cir. 2015)(certifying questions regarding effectiveness of subsequently-recorded affidavit to cure a defective acknowledgement in a mortgage under Massachusetts law).

Neither party cites Rackleff v. Norton, 19 Me. 274 (1841), a case in which the Law Court presumed that a deed was acknowledged by a magistrate in a county where he had jurisdiction. *See* id. at 276. This Court is not persuaded that Rackleff would be controlling or persuasive to the Law Court today. First, the case predates Hudson and was not cited or discussed by the Law Court in Hudson. Second—and perhaps more importantly—Rackleff predates the current statutory scheme regarding real estate transfers, including the various provisions dealing with acknowledgments.

The parties have not cited any controlling authority under Maine law, and the Court has not located any. However, for the reasons discussed above, the Court believes that the Supreme Judicial Court would, if presented with this precise question, hold in

12

favor of the bona fide purchaser.[4]  As a result, the Trustee is entitled to avoid the Debtor's grant of the Mortgage.  By operation of law, that transfer (*i.e.*, the grant of the Mortgage) is preserved for the benefit of the estate.  See 11 U.S.C. § 551.

### B.  Is the Trustee Entitled to Sell Both Interests in the Property Free and Clear of TD Bank's Lien?

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  A sale of estate property under section 363(b)(1) may be free and clear of any interest held by an entity other than the estate in certain circumstances.  See 11 U.S.C. § 363(f)(1)-(5).  Using a combination of section 363(b)(1) and 363(f), the Trustee seeks to sell the Debtor's interest in the Property.  There is no dispute about the Trustee's entitlement to do so.[5]

Where things get a bit more complicated is the Trustee's request to sell, at the same time and presumably to the same buyer, Mr. Bishop's interest in the Property.  As a starting point, the Trustee looks to section 363(h).  That section provides:

---

[4] The parties did not ask the Court to certify any questions to the Supreme Judicial Court under 4 M.R.S.A. § 57.  Although the Court has the authority to certify questions on its own initiative, *see* M.R. App. P. 25(a), the Court believes that the interests of the parties in this adversary proceeding are best served by the issuance of a decision without certification.

[5] Neither party addressed DeGiacomo v. Traverse (In re Traverse), 753 F.3d 19 (1st Cir. 2014) in their memoranda of law. That case involved an attempt by a chapter 7 trustee to sell the debtor's principal residence after the trustee avoided an unrecorded mortgage on the property. The Court of Appeals held that the trustee could not sell the property, which had been exempted and, thus, withdrawn from the estate.  *See* id. at 27.  There are a few key distinctions between Traverse and this case.  First, in Traverse, the debtor claimed a homestead exemption in the property, and existence of that exemption appears to have been critical to the holding in the case.  There is no such claim here.  Second, in Traverse, the debtor had not defaulted in the payment of her mortgage loan obligations. The summary judgment record in this case does not reveal whether the same is true here.  And, third, Traverse did not involve a trustee's request to sell property of the estate and property of a co-owner under section 363.  Traverse contains dicta suggesting that the result might be the same in a case that did not involve an exemption. *See* 753 F.3d at 28-29.  But the holding does not extend that far and this Court believes that Traverse does not stand as an impediment to the Trustee's sale of the Property.  Indeed, the parties have not argued otherwise.

13

>(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
>(1) partition in kind of such property among the estate and such co-owners is impracticable;
>
>(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
>(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
>(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). TD Bank does not dispute that the Trustee is able to sell Mr. Bishop's interest in the Property under section 363(h). It maintains, however, that any such sale of Mr. Bishop's interest would be subject to the Mortgage. TD Bank takes this position for an obvious reason: it wants to get paid from the proceeds of its collateral.

TD Bank is correct that section 363(f) authorizes sales free and clear, and that section 363(h), on its face, does not. But this does not compel the result that TD Bank seeks. If the property were jointly owned, but not encumbered by a mortgage lien, the trustee could sell both ownership interests using a combination of subsections 363(b), (f), and (h). In those circumstances, the co-owner would be protected by subsections 363(i) and (j). *See* 11 U.S.C. § 363(i) (granting, in a sale under subsection (h), a right of first refusal to the co-owner); 11 U.S.C § 363(j) (directing, in a sale under subsection (h), the trustee to distribute the net proceeds to the co-owner according to its interest in the property). There is no good reason why the result should be different here.

Section 105 is not a license to contravene the plain language of the Bankruptcy Code.  *See* Law v. Siegel, 134 S. Ct. 1188, 188 L.Ed.2d 146 (2014).  But it does expressly authorize the Court to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  Here, it is both necessary and appropriate to authorize the Trustee to sell both interests in the Property, subject to the rights of the co-owner under subsections 363(i) and (j).[6]  The Court is confident that the Trustee will construct and propose—and the Court will approve—a process by which the Property can be sold for the best possible price under the circumstances.  Armed with the protections of the statute, the co-owner is fully capable of protecting itself against a sale of the Property at an unacceptable price.  And, if the Property is sold to a third party, the co-owner will get its fair share of the proceeds.  Nothing in the plain language of the Bankruptcy Code compels a different result.

The cases cited by the parties on this question are neither controlling nor persuasive.  For example, Shearer v. ABN Amro Mortgage Group, Inc. (In re Kostelnik), 362 B.R. 215 (Bankr. W.D. Pa. 2007) involved a trustee's attempt to sell jointly-owned real estate.   The principal disagreement centered on whether the mortgagee had a lien on the debtor's interest in the property.  *See* 362 B.R. at 217-20.  After ruling in favor of the trustee on that question, the Court then authorized the trustee to sell the property, with one-half of the net proceeds going to the estate and the other half going to the co-owner or "perhaps [the mortgagee] by virtue of its mortgage . . . ."  *See* id. at 220.  Kostelnik did not address whether the trustee could sell the co-owner's interest in the property over the

---

[6] Perhaps Mr. Bishop is the co-owner of the Property for purposes of section 363.  But Maine is a title theory state when it comes to mortgages, *see* Gilman v. Wills, 66 Me. 273, 274 (1877), and TD Bank has a mortgage on the Property.  Perhaps that mortgage that makes TD Bank the co-owner of the Property for purposes of section 363.  That is a question that the Court does not answer at this point.

15

objection of the mortgagee (which is exactly what we have in this case).  Another case, In re Marko, 2014 WL 948492 (Bankr. W.D.N.C. 2014), addressed the question more directly, but ultimately concluded that the trustee's "ability to use § 363(f)(4) in conjunction with § 363(h) to sell property free of disputed liens on co-owners interests is questionable."  Id. at *5.  Marko is not persuasive because it did not involve a lien avoided under section 544, or address the interplay between sections 105 and 363 in this context.  Moreover, none of these cases provide a sufficient answer to the following question: why should TD Bank be permitted to retain all of the net proceeds on account of its lien on a one-half undivided interest in the Property, after the mortgage on the other one-half undivided interest has been avoided under section 544?  TD Bank offers no persuasive answer to that question.

The Trustee has not, at this point, identified a purchaser for the Property, or even proposed a mechanism for identifying a purchaser.  Although the Court agrees that the law allows the Trustee to sell both interests in the Property free and clear of the Mortgage, the Court is not, by this decision, approving any particular disposition of the Property.  That will await a later day, most likely after resolution of the Bishops' cross-claims against TD Bank.

### III. Conclusion

A separate order granting the Trustee's motion and denying TD Bank's motion will be entered.

Dated:  July 28, 2016

Michael A. Fagone
United States Bankruptcy Judge
District of Maine

16